RAYMOND CHENOWITH v. STATE OF ARKANSAS

5432                                          445 S. W. 2d 889

Opinion delivered October 27, 1969

*Irwin, Streett & Brocker,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Appellant Raymond Chenowith was convicted upon 10 counts of forgery and 10 counts of uttering. His only contention for reversal is that the trial court failed to conduct a ''Denno' hearing in accordance with Ark. Stat. Ann. § 43-2105 (Supp. 1967), outside the presence of the jury before admitting into evidence certain affidavits he had signed in the presence of his attorney.

Mr. Harold Hampton, an employee of People's Bank & Trust Co. of Russellville at the time of the occurrence, testified that he did not know how far in advance he knew he was going to Tulsa but that he knew he was going to Tulsa, because he was present when Mr. Irwin, appellant's counsel, and Mr. Mobley, the prosecuting attorney, came into Mr. Barger's office. (Mr. Barger is president of the People's Bank & Trust Co.). He said that he and Mr. Irwin went to Tulsa to get Chenowith to admit forgery as far as he knew of the notes involved. Other testimony from the witness insinuated that some of the bank's insurance was involved in the transaction. Mr. Hampton says that when they met Mr. Chenowith in a hotel in Tulsa, Mr. Chenowith went over the accounts and under instructions from his counsel signed the affidavits on the accounts that were not genuine and that on the accounts that he claimed were good he merely passed them on. There were several affidavits signed at the time.

The affidavits introduced identify the note involved by number and state that the name signed to the note is not genuine or authorized by the maker, ''that in fact said purported signature was affixed to said instrument by Raymond Chenowith without the knowledge or authority of the purported maker and was executed for 'Glen's Used Cars' for the purpose of obtaining money and credit from People's Bank & Trust Co. of Russellville, Ark. in the amount of the principal and amount reported to be due on said note.''

Ark. Stat. Ann. § 43-2105, *supra,* provides:

"Issues of fact shall be tried by a jury, provided that the determination of fact concerning the admissibility of a confession shall be made by the court when the issue is raised by the defendant; that the trial court shall hear the evidence concerning the admissibility and the voluntariness of the confession out of the presence of the jury and it shall be the court's duty before admitting said confession into evidence to determine by a preponderance of the evidence that the same has been made voluntarily."

Under the statute and the affidavits here involved, the trial court erred in not determining the voluntariness of the confessions before they were admitted into evidence. For this reason the cause is reversed and remanded.

Reversed and remanded.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur because I cannot find where the trial judge ever made any ruling that the confessions in the affidavits of Chenowith were voluntary. I have the same view in this case as that expressed in my concurring opinion in *Estep* v. *State*, 244 Ark. 843, 427 S. W. 2d 535. Here, as there, the record was totally devoid of any offer of proof which might be anticipated in a hearing on the question of voluntariness of the confession.

This is a case in which it might easily be said that no prejudice resulted from a determination by the trial judge in the presence of the jury, in the absence of any proffer by appellant or request that he be permitted to testify. The language contained in an annotation in 19 L. Ed. 2d 1313 at 1315 (1968) is appropriate:

"While it has been widely recognized that it is im-

proper to permit the jury to be present, even where no request for its exclusion was made, only a few state courts have gone so far as to indicate that the presence of the jury is prejudicial under all circumstances. More generally, and especially in the federal courts, it has been held that the jury's presence during the preliminary hearing into the voluntariness of a confession does not constitute prejudicial error where the trial court eventually holds the confession voluntary and admits it into evidence. Where the confession is found to be involuntary and inadmissible, the jury's presence during the hearing is more likely to be considered prejudicial.

It should be noted that many of the courts, both state and federal, which have in recent years held or stated that voluntariness hearings 'must' be held outside the presence of the jury, reached this conclusion on the basis of their interpretation that *Jackson* v. *Denno* required such a result. The value of these cases is now questionable in view of the fact that the Supreme Court itself did not read *Jackson* v. *Denno* to require this result. At least one court has already taken note of the fact that the Supreme Court does not require all hearings to be outside the presence of the jury.''

I do not know of any reason why the rule that we will not find error in refusal by the trial court to admit or hear evidence in the absence of a proffer should not apply to a proceeding in determining the voluntariness of a confession. I do not see how there could really have been a question of fact in this case.

The affidavits constituting the confessions were prepared in blank form, so that the note number, the name of the purported maker and the name of the person who actually signed the name of the purported maker could be inserted. The identity of the preparer

is not shown. Hampton, a bank employee, was told by the bank president that he was to accompany Chenowith's attorney, Irwin, to Tulsa to meet Chenowith. At some time prior to this trip, there was a conference at the bank among the bank president, the prosecuting attorney and Irwin. Along with the blank affidavit forms Hampton and Irwin took 40 or 50 notes held by the bank and purportedly signed by purchasers of automobiles sold by Chenowith. When the parties assembled, Chenowith and Irwin conferred privately. When they rejoined Hampton, Irwin presented each note for Chenowith's inspection and instructed him to state whether the note was genuine or a forgery. Whenever Chenowith indicated that a note was forged, the appropriate information was inserted in a blank affidavit form. He then signed the affidavit and the jurat was signed by Irwin as a notary public. Hampton did not remember having seen these forms until this time. He could not remember whether he or Irwin actually took them to Tulsa. It was his recollection that Irwin kept the completed affidavits and delivered them to the bank the following day. He says that he did not tell Chenowith that no charges would be filed against him.

The coercion of a confession by one in the presence of his own attorney, with whom he had first consulted privately, seems highly improbable. This is particularly so when the attorney is an active participant in the confession. In the absence of any showing that there was evidence tending to overcome this strong evidence of voluntariness, I could not say that appellant was prejudiced.

It is regrettable that we cannot follow a procedure in this case similar to that followed by the federal courts when state convictions are reviewed in habeas corpus proceedings. It would be more appropriate to remand with directions to the trial judge to hold a hearing to determine whether the statements were voluntarily made, and to grant a new trial if they were not found to be voluntary.